UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BUILDING 11 INVESTORS LLC,

Plaintiff,

v.

CITY OF SEATTLE,

Defendant.

CASE NO. C11-1480 TSZ

ORDER

THIS MATTER comes before the Court on a Motion to Dismiss Constitutional, Declaratory Judgment, and Good Faith and Fair Dealing Claims Pursuant to Federal Rule of Civil Procedure 12(c), docket no. 40, by Defendant City of Seattle.  Having reviewed the memoranda, declarations, and exhibits submitted by the parties, the Court enters the following Order.

I.    **Background**

This case arises out of an alleged breach of a lease agreement between Plaintiff Building 11 LLC ("the LLC") and Defendant City of Seattle ("the City").  Building 11 is one of several historic buildings located in Magnuson Park constructed prior to World War II for the Sand Point Naval Air Station.  Due to years of maintenance neglect, Building 11 is no longer code compliant.  Second Amended Complaint ("Complaint"),

ORDER - 1

1    docket no. 27, at ¶ 3.8.  Defendant issued a Request for Proposals ("RFP") for the

2    redevelopment of Building 11 in 2005.  The RFP sought a developer/operator to

3    redevelop and operate Building 11 as a public-private partnership.  Seattle City Council

4    Resolution No. 30063, dated November 1, 1999, provided that the area in which Building

5    11 is located could be used for commercial offices and restaurants in addition to

6    traditional park uses.

7          Plaintiff submitted the sole qualified proposal to Defendant in June 2006.  *Id.* at

8    ¶ 3.11.  Following a period of public comment, the Board of Parks Commissioners

9    approved the proposal for Building 11 and recommended continued negotiations with the

10    LLC.  *Id.* at ¶ 3.13.  In September 2008, the Seattle City Council passed Council Bill

11    No. 116313 and Ordinance No. 122814, authorizing the Superintendent of Parks &

12    Recreation to execute a 30-year lease agreement ("the Lease") with Plaintiff.  *Id.* at

13    ¶¶ 3.19, 3.20.  The parties signed the Lease, subject to certain contingencies, in February

14    2009.  *Id.* at ¶¶ 3.16, 3.25.

15          Under the Lease, the bulk of the LLC's rent was to be forgiven by the City over

16    time until the costs of renovation and construction had been paid for.  Rent was to be

17    reduced even further if the LLC offered low-cost or free programs to the public.  The

18    Lease described a variety of permitted uses, setting space minimums for "Primary Park

19    and Recreation Uses" and maximums for "Other Park and Recreation Uses" and

20    "Permitted Commercial Uses."  Lease, docket no. 42-1, at ¶¶ 2.5.1–2.5.3.  It also

21    provided that Sail Sand Point, an existing tenant in Building 11, would be retained as a

22

23

ORDER - 2

1    sub-lessee.  _Id._ at ¶ 2.5.4.  Finally, the Lease gave the LLC the exclusive right to operate

2    a restaurant and daycare within Magnuson Park.  _Id._ at ¶ 8.6.

3            During negotiations between the LLC and Sail Sand Point concerning the terms

4    and conditions of the sub-lease, the relationship began to deteriorate.  Complaint at

5    ¶¶ 5.2–5.6.  The LLC alleges that Sail Sand Point "began a campaign to cause the City to

6    repudiate" the Lease.  _Id._ at ¶ 5.3.  Around that same time, in the summer and fall of

7    2010, the LLC requested several changes to the Lease, including the expansion of the

8    premises for a children's play area and a restaurant patio, inclusion of a Subordination

9    and Non Disturbance Agreement (SNDA) required by subtenants, and addition of

10   language required by the LLC's lender for financing purposes.[1]  _Id._ at ¶¶ 4.2–4.6.  The

11   LLC argues that these "ministerial," "technical," or "non-economic" amendments[2] were

12   anticipated by both parties and should have been readily granted.  _Id._ at ¶¶ 4.2–4.9.  The

13   City maintains that these amendments would have substantively changed the terms of the

14   agreement, the amendments required public debate and City Council action to approve,

15   and any discussions of an amended lease was not binding because the Lease is an

16   integrated agreement.  Def. Motion at 5.

17

18   [1] Ordinance No. 123685, authorizing the City to enter into an amended lease, also extended the
     term of the Lease by ten years.  _Compare_ Lease, docket no. 42-1, at ¶ 3.1, _with_ Ordinance
19   No. 123685, docket no. 42-2, at ¶ 3.1.  Plaintiff and Defendant do not agree, however, on which
     party requested this change.  Pla. Resp., docket no. 46, at 5 ("The city's motion is wrong to claim
     that Building 11 asked for 9 extra years on its lease in the proposed amendments.").  The
20   Complaint does not allege which party requested the Lease term extension.

21   [2] The LLC has used all three terms to describe the nature of their proposed lease amendments.
     _See_ Complaint at ¶¶ 4.7, 6.1(b), 6.1(d), 8.6 ("technical"); _Id._ at ¶¶ 6.1(d), 7.3, 7.7, 7.9, 7.12,
22   9.11, 10.4 ("ministerial"); Pla. Response, docket no. 46, at 1–6, 9, 10, 14, 15, 19 ("non-
     economic").

23

ORDER - 3

On August 8, 2011, the City Council passed Council Bill No. 117196 (Ordinance No. 123685), which authorized an amended lease between the City and the LLC. Complaint at ¶ 6.3; Ordinance No. 123685, docket no. 42-2.  The Ordinance authorizing an amended lease included the LLC's requested amendments but also added changes advantageous to the City.  Complaint at ¶ 6.1(h), 6.3.  The changes advanced by the City included the following: (1) $900,000 in additional up-front payments to the City; (2) decreased rent credits by as much as $5 million; (3) withdrew restaurant exclusive; (4) required leasing of space to artists; and (5) decreased space available to non-subsidized sub-tenants.  _Id._  The LLC asserts that these changes made the Lease "commercially impossible."  Pla. Resp., docket no. 46, at 9.  The City maintains that these changes were appropriate based on the public debate required by the LLC's requested amendments. Def. Motion at 5.

After rejecting the City's proposed amended lease, the LLC filed suit, alleging breach of contract, breach of the duty of good faith and fair dealing, denial of equal protection, unconstitutional taking, and denial of substantive due process under 42 U.S.C. § 1983.  Complaint at §§ VI–IX.  The Complaint alleges, among other things, that Plaintiff and Defendant had a "mutual understanding" that the Lease would need to be modified in a manner consistent with the changes proposed by the LLC.  _Id._ at ¶ 4.3. Specifically, the LLC alleges that the City knew that an outside play area was required for the proposed childcare facility and admitted the error of failing to include this in the Lease was the City's fault.  _Id._ at ¶ 4.4.  Likewise, the LLC alleges that the Lease and the parties always anticipated "the project would have to be financed to be completed and

1    that any lender would require language in the lease for its protection." _Id._ at ¶ 4.5.

2    According to the LLC, the City's failure to approve the LLC's amendments was a breach

3    of the duty of good faith and fair dealing as well as a violation of the U.S. Constitution.

4          The LLC asserts that the Seattle City Council sought to unwind the deal due to

5    community pressure and used the LLC's proposed amendments as the pretext to do so.

6    The LLC alleges, for example, that Seattle City Councilwoman Sally Bagshaw

7    "consulted" with Gail Chiarillo, a community activist, "as to ways in which the City

8    could avoid performance" and allowed her "to dictate the terms to be demanded in return

9    for the City's honoring its pre-existing obligations under the lease." _Id._ at ¶ 7.8.  The

10   Complaint further alleges that Sail Sand Point "attempted to influence the City to delay

11   consideration of the lease." _Id._ at ¶ 5.4.  In addition, it accuses Sail Sand Point officials

12   of urging "that the City not honor its lease" with the LLC.  _Id._ at ¶ 5.3.

13         The City moves to dismiss with prejudice the LLC's claims for breach of the

14   implied duty of good faith and fair dealing, declaratory judgment, violation of 42 U.S.C.

15   § 1983, denial of substantive due process, unconstitutional taking, and violation of equal

16   protection.[3]  Def. Motion at 2.

17   **II.    Discussion**

18         Before proceeding to the City's substantive arguments, the Court must first

19   determine the applicable legal standard, which is informed by the documents the Court

20   has considered.

21   _____

22   [3] The City does not challenge the LLC's claim for breach of contract.  Def. Motion at 2 n.3
     (citing Complaint at ¶ 6.1(e)).

23

ORDER - 5

A.  **Legal Standard**

The LLC asserts that the City "offered allegations that go far beyond the [Complaint]," and it offers "rebuttal evidence" in response.  Pla. Resp. at 2 n.1.  According to the LLC, "if the court is going to consider allegations and any evidence outside of the complaint, including the documents relied on and cited in the complaint, then the motion should be converted to one for summary judgment."  _Id._  The City maintains that it submitted documents that the Court may consider in a Rule 12(c) motion under the incorporation by reference doctrine.  Def. Motion at 1 n.2.  The City has moved to strike the LLC's rebuttal declarations and exhibits accompanying the response.  Def. Reply, docket no. 49, at 1–2.  For the reasons explained below, the LLC is incorrect, its rebuttal evidence will not be considered, and the motion need not be converted to summary judgment.

1.  **Documents Considered**

Under the incorporation by reference doctrine, the Court is permitted "to take into account documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'"  _Knievel v. ESPN_, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting _In re Silicon Graphics Inc. Sec Litig._, 183 F.3d 970, 986 (9th Cir. 1999)).  The Ninth Circuit extended the doctrine to include "situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the documents, even though the plaintiff does not

ORDER - 6

1  explicitly allege the contents of that document in the complaint." *Id.* (citing *Parrino v.*
2  *FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998)).

3  Here, the City included a declaration accompanied by nine exhibits in support of
4  its Rule 12(c) motion.  Declaration of Gregory C. Narver, docket no. 42, at ¶¶ 2–3.
5  Exhibit A is a copy of the lease between the LLC and the City and Exhibit B is the
6  Ordinance authorizing the City to enter into an amended lease.  Plaintiff's Complaint
7  quotes and cites these two documents throughout.  <u>Id.</u> (citing various paragraphs of the
8  Complaint).  Exhibit C is the LLC's response to the City's Request for Proposal for
9  Building 11 that is quoted and referenced in the Complaint.  *Id.* at ¶ 4 (citing Complaint
10 at ¶¶ 3.11–3.13, 3.16, 6.1(f), 10.4).  Exhibits G, H, and I are copies of Seattle Ordinances
11 approving amendments to agreements between the City and Arena Sports Magnuson
12 Park, LLC, the City and Seattle Court Sports Unlimited, Inc., and the City and the
13 Mountaineers respectively.  *Id.* at ¶¶ 8–10.  The Complaint references these amended
14 agreements to argue that the LLC was treated differently than other entities at Magnuson
15 Park.  Complaint at ¶¶ 6.1(c), 7.14.  Finally, Exhibits D, E, and F are three letters dated
16 October 6, 2010, from Christopher Williams addressing potential changes to the Lease
17 between the LLC and the City that are referenced in the Complaint.  *Id.* at ¶ 4.3.  The
18 LLC does not challenge the authenticity of any of the documents.  As a result, each of the
19 documents filed by the City can be considered in a Rule 12(c) motion.  *See* *Knievel*, 393
20 F.3d at 1076.

21 The LLC's contention that the Court should convert this motion to one for
22 summary judgment if it considers "documents relied on and cited in the complaint" is

23

ORDER - 7

1  incorrect.  Pla. Resp. at 2 n.1.  Ninth Circuit precedent allows a court to consider

2  documents that are referenced in, but not attached to, Plaintiff's complaint.  <u>Knievel</u>, 393

3  F.3d at 1076.  The LLC's mere assertion that the City's motion "goes way beyond a

4  motion to dismiss by taking documents out of context and adding the city's own selective

5  memory to the origin of the documents," Pla. Resp. at 5, does not make it so.  The City

6  provided ample justification for the consideration of each document and its importance to

7  the LLC's complaint.

8         On the other hand, the LLC has also filed various declarations and more than two

9  dozen exhibits—including excerpts of deposition testimony, emails from and to City

10  officials, photographs of Magnuson Park, and a "list of political organizations opposed to

11  the lease amendments"—which fall outside the perimeters of the doctrine of

12  incorporation by reference.  Declaration of Nicholas Echelbarger, docket no. 44;

13  Declaration of Darrel Vange, docket no. 45; Declaration of Bruce P. Babbit, docket

14  no. 47, Exs. 1–34.  However, the LLC does not identify where within the Complaint these

15  exhibits are quoted, cited, or referenced or explain how the documents are otherwise

16  integral to the Complaint.  In its own limited inquiry, the Court has been unable to

17  ascertain any such reference.  The LLC's voluminous filings appear to be the result of its

18  misguided understanding of the doctrine.[4]

19

20

21  [4] The LLC's declarations also contain inadmissible hearsay and other statements that will not be
    admissible at trial.  <u>See</u>, <u>e.g.</u>, Declaration of Nicholas Echelbarger at 2–6 (discussing statements

22  by Tim Gallagher and his understanding of the Lease).  The parties' rights arise from the Lease,
    not from one party's understanding of the Lease or what one or more persons may have
    contemplated.

23

1

2       Defendant's Motion to Strike Plaintiff's declarations and exhibits, docket nos. 44,

3   45, and 47, is GRANTED.  Plaintiff's request that the Court convert Defendant's motion

4   into a motion for summary judgment is DENIED.

5                   2.  **Judgment on the Pleadings Standard**

6       "After the pleadings are closed but within such time as not to delay the trial, any

7   party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  A Rule 12(c)

8   motion is evaluated under the same standard as a motion under Rule 12(b)(6).  _Dworkin_

9   _v. Hustler Magazine Inc._, 867 F.2d 1188, 1192 (9th Cir. 1989).  Dismissal under Rule

10  12(b)(6) may be based on either the lack of a cognizable legal theory or absence of

11  sufficient facts alleged under a cognizable legal theory.  _Balistreri v. Pacifica Police_

12  _Dep't_, 901 F.2d 696, 699 (9th Cir. 1990).  A plaintiff's complaint must allege facts to

13  state a claim for relief that is plausible on its face.  _See Ashcroft v. Iqbal_, 556 U.S. 662,

14  678 (2009).

15      A claim has "facial plausibility" when the party seeking relief "pleads factual

16  content that allows the court to draw the reasonable inference that the defendant is liable

17  for the misconduct alleged."  _Id._  In making this assessment, the Court accepts all facts

18  alleged in the complaint as true, and makes all inferences in the light most favorable to

19  the non-moving party.  _Baker v. Riverside Cnty. Office of Educ._, 584 F.3d 821, 824 (9th

20  Cir. 2009) (internal citations omitted).  The Court is not, however, bound to accept the

21  plaintiff's conclusory allegations of law and unwarranted inferences will not defeat an

22  otherwise proper motion.  _Vasquez v. L.A. County_, 487 F.3d 1246, 1249 (9th Cir. 2007);

23

1    _Sprewell v. Golden State Warriors_, 266 F.3d 979, 988 (9th Cir. 2001).  The plaintiff must

2    provide more than "labels and conclusions" or "a formulaic recitation of the elements of a

3    cause of action" to be entitled to relief.  _Bell Atl. Corp. v. Twombly_, 550 U.S. 544, 555

4    (2007).  "Factual allegations must be enough to raise a right to relief above the

5    speculative level."  _Id._

6    **B.  Breach of the Duty of Good Faith and Fair Dealing**

7         In Washington, every contract includes an implied duty of good faith and fair

8    dealing.  _Badgett v. Sec. State Bank_, 116 Wn.2d 563, 569-70 (1991).  "This duty obligates

9    the parties to cooperate with each other so that each may obtain the full benefit of

10   performance."  Id.  However, under Washington law, the "covenant of good faith and fair

11   dealing exists only in relation to performance of a specific contract obligation."  _Gossen_

12   _v. JP Morgan Chase Bank_, 819 F. Supp. 2d 1162, 1170 (W.D. Wash. 2011) (citing

13   _Badgett_, 116 Wn.2d at 570).  The implied duty does not add new obligations to a

14   contract.  _Metropolitan Park Dist. of Tacoma v. Griffith_, 106 Wn.2d 245, 437 (1986)

15   (quoting _Lonsdale v. Chesterfield_, 99 Wn.2d 353, 357 (1983)).  Moreover, while parties

16   "may choose to renegotiate their agreement, they are under no good faith obligation to do

17   so."  _Badgett_, 116 Wn.2d at 572.

18        Here, the City asserts that the LLC's claim for breach of the duty of good faith and

19   fair dealing attempts to "inject substantive terms" into the Lease.  Def. Motion, docket

20   no. 40, at 11.  Specifically, the City argues that it was under no duty to negotiate a change

21   to the Lease and "particularly had no duty to do so without imposing conditions or

22   seeking additional consideration."  _Id._  According to the City, the LLC's theory would

23

ORDER - 10

1    impose a "free-floating duty unattached to the underlying legal document" because "there

2    is no specific contract term here that requires the City to agree to unconditionally change

3    the Lease upon the LLC's request." _Id._ (citing _Badgett_, 116 Wn.2d at 569–70). The City

4    argues that using the duty of good faith to create an enforceable "agreement to agree" that

5    is not in writing is inconsistent with Washington state law. _Id._ at 11–12 (citing _Keystone_

6    _Land & Dev. Co. v. Xerox Corp._, 152 Wn.2d 171, 180 (2004).

7            The LLC provides little relevant argument in response. First, its reliance on

8    federal and non-Washington law is unpersuasive. _See_ Pla. Resp., docket no. 46, at 20–22

9    (citing cases from the Federal Circuit and Kansas state court). Second, the LLC's

10   assertion that _Badgett_ "does not apply" is incorrect. _Id._ at 23. The implied duty as

11   explained in _Badgett_ applies to all contractual duties. _Keystone Land & Development Co._

12   _v. Xerox Corp._, 152 Wn.2d 171, 177 (2004).

13           However, to the extent that the LLC argues that the City's alleged duty of good

14   faith and fair dealing is tied to sections §§ 2.5.2 and 8.6.2 of the Lease relating to a

15   childcare facility and section §§ 7.2.1 and 8.9 of the Lease relating to obtaining financing,

16   the implied duty of good faith obligates the parties to act so that they both receive the

17   benefit of the bargain related to the duties and obligations imposed by those terms.

18   Sections §§ 7.2.1 and 8.9 anticipate that financing will exist. Sections §§ 2.5.2 and 8.6.2

19   anticipate that the LLC may sub-lease to a daycare, and that if the LLC does sub-lease to

20   a daycare, such daycare would be exclusive north of the NOAA access road. The LLC

21   asserts that these provisions of the Lease create an implicit obligation by the City to

22   consider Plaintiff's proposed amendments in good faith. Pla. Resp. at 21.

23

ORDER - 11

The LLC next turns to pre-*Badgett* case law to argue that the implied duty of good faith creates an obligation by the City to consider the LLC's proposed lease amendments in good faith. *Id.* Citing *Metro. Park Dist. of Tacoma v. Griffith*, 106 Wn.2d 425, 437 (1986), the LLC argues that the financing and childcare provisions of the Lease created an obligation by the City to consider the LLC's proposed lease amendments because the parties contemplated in the Lease that Building 11 would obtain financing and that the LLC would sub-lease to a daycare facility that would require an outdoor play area. Pla. Resp. at 25.

The LLC cannot use the implied duty of good faith to create new substantive obligations under the Lease   However, the Court concludes that plaintiff has alleged a facial plausible claim of the duty of good faith as to certain provisions of the Lease.

### C. Partnership

The Court also concludes that the LLC and the City did not form a partnership as a matter of law.  The LLC alleges in the Complaint that the Lease agreement, Seattle City Ordinance 116313, and Seattle City Ordinance 122814, in some combination, created a partnership between the LLC and the City.  Complaint at ¶ 3.19.  The LLC has not alleged any relevant facts to support this assertion.  The LLC supports this assertion by noting that various individuals referred to the relationship as a "partnership."  *Id.* at ¶ 3.21 (quoting two members of the Seattle City Council).  But the intent of the parties is not determinative.  RCW § 25.05.055(1).  Under Washington law, a partnership is formed by "the association of two or more persons to carry on as co-owners a business for profit." *Id.*

ORDER - 12

1    A partnership does not exist merely because a party declares it.  The Court cannot

2    find any facts alleged in the Complaint that establish the existence of a partnership.  To

3    the contrary, the facts that are pleaded, like the payment of rent by the LLC to the City,

4    clearly shows that a partnership did not exist.  _See_ RCW § 25.05.055(3).  Because the

5    LLC has failed to provide more than "labels and conclusions," its allegation that a

6    partnership existed is not plausible and will not be treated as true.  _Twombly_, 550 U.S. at

7    555.

8    **D.  Declaratory Judgment**

9        The City's motion to dismiss the LLC's claim for Declaratory Judgment is

10   DENIED because this request for relief is contingent on the Court's decision on the

11   LLC's claims for breach of the implied duty of good faith and fair dealing.

12   **E.  Constitutional Claims**

13       The LLC uses the same facts to support three constitutional claims: denial of

14   substantive due process, unconstitutional taking, and violation of equal protection.  The

15   City moves to dismiss these claims arguing that a contract dispute does not become a

16   constitutional matter simply because one of the parties is a municipality.  Def. Motion,

17   docket no. 40, at 15–24.  The City contends that the LLC's sole remedy is provided by

18   the law of contracts, not the U.S. Constitution, because "[i]t is neither workable nor

19   within the intent of section 1983 to convert every breach of contract claim against a state

20   into a federal claim."  _San Bernardino Physicians Servs. Med. Group, Inc. v. Cnty. of San_

21   _Bernardino_, 825 F.2d 1404, 1408 (9th Cir. 1987).

22

23

ORDER - 13

1

### 1. **Substantive Due Process**

The Due Process Clause provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The Clause confers both procedural and substantive rights. *United States v. Salerno*, 481 U.S. 739, 746 (1987). Substantive due process forbids the government from depriving a person of life, liberty, or property in such a way that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty." *Id.* To maintain a substantive due process claim, the LLC must show that the City's denial of the proposed amendments "lacked a rational relationship to a government interest." *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 485 (9th Cir. 2008) (internal citations omitted).

The burden this places on the LLC is "extremely high" because the inquiry is not whether the act advanced the stated purpose but whether "the governmental body *could* have had no legitimate reason for its decision." *Richardson v. City & Cnty. of Honolulu*, 124 F.3d 1150, 1162 (9th Cir. 1997) (emphasis in original) (internal quotations omitted). To prove that the City violated the LLC's substantive due process rights, the LLC must demonstrate that (1) the Lease was the type of property the Due Process Clause protects, and (2) the City deprived the LLC of its rights under the contract in a way that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998).

The City contends that because the Lease remains in effect, Plaintiff has not been deprived of a property interest and does not give rise to a substantive due process claim. This suit is about the City's denial of the LLC's alleged right to the approval of

ORDER - 14

amendments requested by the LLC.  This right could only exist if the LLC had a

"legitimate claim of entitlement" to the amendments that derived from a non-

discretionary independent source such as state or local law.  _Gerhart v. Lake Cnty. Mont._,

637 F.3d 1013, 1019–20 (9th Cir. 2011), _cert. denied_ 132 S. Ct. 249 (2011).

The government does not violate substantive due process each time it breaches a

contract.  _See Khan v. Bland_, 630 F.3d 519, 535–36 (7th Cir. 2010), _cert. denied_, 132

S. Ct. 754 (2011); _see also Lujan v. G & G Fire Sprinklers, Inc._, 532 U.S. 189, 195

(2001) (holding that due process is not deprived when California law affords plaintiff

sufficient opportunity to pursue the claim in state court).  The Ninth Circuit has

interpreted _Lujan_ to mean "that the common law breach of contract claim provides

adequate process for the deprivation of a property right derived from a contract, unless

the deprivation constitutes a denial of a present entitlement."  _DeBoer v. Pennington_, 287

F.3d 748, 749–50 (9th Cir. 2002).  A present entitlement is "a right by virtue of which

[one is] presently entitled either to exercise ownership dominion over real or personal

property, or to pursue a gainful occupation."  _Lujan,_ 532 U.S. at 196.  In the

circumstances presented here, the LLC, like those in _DeBoer_ and _Lujan,_ is fully protected

by an ordinary breach of contract claim.

Consequently, the claim for violation of substantive due process is dismissed.[5]

_____

[5] Defendant also advances a variety of justifications under rational basis review that would apply
to the substantive due process claim under § 1983.  The Court need not reach the issue of rational
basis review because there is no deprivation of a property interest.

2.  **Takings**

Similarly, the LLC's takings claim is not cognizable.  "As a general proposition, a leasehold interest is property, the taking of which entitles the leaseholder to just compensation for value thereof."  <u>Sun Oil Co. v. United States</u>, 572 F.2d 786, 818 (1978). "Further, authorized governmental actions can entail such an actual invasion of property rights that a constitutional taking can be implied."  <u>Id.</u>  But a takings claim "has limited application" when the rights are created by contract.  <u>Id.</u>  In such instances, as with other government contracts, interference with such contractual rights generally gives rise only to a breach of contract action.  <u>Id.</u>

In this case, the LLC does not dispute that the City was acting in a proprietary capacity when it entered into the Lease as inferred from the allegations of the Complaint. The LLC also does not allege that it is precluded from the full range of remedies associated with any contractual property—in fact, it asserts those contract claims along with its constitutional ones.  Complaint at ¶¶ 6.1–6.5.  The LLC instead devotes its argument to establishing a viable property interest in its proposed amendments that is sufficient for a takings claim.  Pla. Resp. at 18–20, 23–24.  Even if the City has deprived the LLC of the Lease by "imposing onerous conditions," <u>id.</u> at 24, the LLC's ability to enforce its rights under the Lease is not impaired.

In fact, the authority the LLC cites in its substantive due process argument supports dismissal of its takings claim.  <u>See id.</u> at 18, 23 (citing <u>Cross Continent Dev., LLC v. Town of Akron, Colo.</u>, 742 F. Supp. 2d 1179 (D. Colo. 2010)).  In <u>Cross Continent</u>, a lessee of government land sued the government alleging that the termination

of the lease effected a taking.  742 F. Supp. 2d at 1183.  Noting that plaintiff's claims

arose out of the termination of the lease, the court held that the lease between the lessee

and the government "specified what would occur when a party breached the contract."

*Id.* at 1185.  The lease contemplated termination and provided that "it may be terminated

by a party only upon 'written notice' of the existence of a breach and after providing the

party alleged to be in breach with, at minimum, a one-year opportunity to cure."  *Id.* at

1183.  The court noted that the government did not prevent the lessee from seeking

contractual remedies for losses related to the termination, and that the lessee pursued a

breach of contract case.  *Id.* at 1185.  Accordingly, the *Cross Continent* court dismissed

the taking claim because the lessee had a contractual remedy.  *Id.* at 1186.

Here, as in *Cross Continent*, the parties, a lessee and a municipal government,

entered into a Lease that specified the obligations of the parties.  Under the Lease, the

LLC has the right to seek damages for any breach.  The LLC points to no facts and makes

no argument to suggest its contractual rights and ability to enforce those rights under

contract law have been impaired.  Pla. Resp. at 23–24.  The LLC has brought breach of

contract and breach of the duty of good faith and fair dealing claims in this case.

The LLC misunderstands what the Lease provides for in the event of breach.  In

this case, the Lease does not confer "a right protected from taking."  Rather it promises

"either to regulate [the parties] consistent with the contract's terms, or to pay damages for

breach."  *Klamath Irrigation Dist. v. United States*, 67 Fed. Cl. 504, 532 (Fed. Cl. 2005)

(internal quotation omitted).  "Under this approach, the availability of contract remedies

is sufficient to vitiate a takings claim."  *Id.*; *see also Die Casters Intern., Inc. v. United*

1  *States*, 73 Fed. Cl. 174, 198 (Fed. Cl. 2006) (denying takings claim when the plaintiff

2  voluntarily entered into a lease with the Government as a commercial partner).

3            **3.  Equal Protection**

4          The LLC also claims that by not granting the requested amendments, the City

5  violated the Equal Protection Clause of the Fourteenth Amendment.  Complaint at

6  ¶¶ 9.1–9.12.  The Equal Protection Clause guarantees, "No state shall . . . deny to any

7  person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV,

8  § 1.  Equal protection jurisprudence has traditionally been concerned with governmental

9  action that disproportionally burdens certain classes of citizens.  Plaintiff's equal

10  protection claim, however, is a "class-of-one" claim.  Complaint at ¶¶ 9.1–9.14; Pla.

11  Resp. at 12–18.

12          In a class-of-one claim, a single plaintiff "alleges that she has been intentionally

13  treated differently from others similarly situated and that there is no rational basis for the

14  difference in treatment."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

15  Courts have allowed this claim in a variety of factual scenarios.  *See*, *e.g.*, *Olech*, 528

16  U.S. at 562 (unfavorable zoning decisions); *Geinosky v. City of Chicago*, 675 F.3d 743,

17  749 (2012) (baseless parking tickets); *Gerhart*, 637 F.3d at 1023 (withholding permits);

18  *Mimics, Inc. v. Vill. of Angel Fire*, 394 F.3d 836, 849 (10th Cir. 2005) (selective

19  regulatory enforcement).

20          To avoid turning every government decision into a constitutional case, the

21  Supreme Court narrowed the availability of the class-of-one claim in *Engquist v. Or.*

22  *Dep't of Agric.*, 553 U.S. 591 (2008).  In *Engquist*, the Court held that the class-of-one

23

1  theory was a "poor fit" in the public employment context.  *Id.* at 605.  Unlike the *Olech*

2  zoning decision, the employment decision in *Engquist* was "subjective and

3  individualized, resting on a wide array of factors that are difficult to articulate and

4  quantify."  *Id.* at 604.  The lack of a clear standard precluded the claim as a matter of law.

5  *Id.* at 602.

6        Thus, to succeed on its "class of one" claim, the LLC must allege that the City:

7  (1) intentionally (2) treated the LLC differently than other similarly situated property

8  owners (3) without a rational basis.[6]  *Willowbrook*, 528 U.S. at 564; *North Pacifica LLC*

9  *v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).  Although the LLC must show that

10  the City's decision was intentional, it need not show that the City was motivated by

11  subjective ill will.  *Willowbrook*, 528 U.S. at 565.  In this case, the LLC's complaint

12  identifies three "similarly situated" entities for comparison: Arena Sports, the Tennis

13  Center, and the Mountaineers.  Complaint at ¶¶ 6.1(c), 7.14, 9.1–9.5.  Each of these

14  entities has a long-term lease with the City for a building in Magnuson Park.  Further,

15  each entity requested and received amendments to their original leases.

16        The City advances two arguments in support of its motion to dismiss: (1) the

17  entities identified by the LLC are not similarly situated, and (2) the class-of-one theory

18  does not apply to discretionary decisions to amend a contract.  Def. Motion at 23–24;

19  Def. Reply at 9–12.  The Court will address each argument in turn.

20

21  [6] A claim for equal protection does not require a property interest.  Thus, the analysis used to
22  dismiss the LLC's substantive due process and takings claims as a matter of law is not
    applicable.

23

ORDER - 19

1    First, the City contends that the LLC's claim fails because there are no "similarly

2    situated" lessees.  *Id.*  The City argues that the Lease permitted the LLC to sublease a

3    portion of the building to commercial entities.  Lease at ¶¶ 1.1, 2.5.3.  None of the

4    comparable entities allowed such usage; they leased the space solely for public

5    recreation.  *See* Seattle Ordinance 122813 (Arena Sports); Seattle Ordinance 123331,

6    docket no. 42-8 (Tennis Center); Seattle Ordinance 123258, docket no. 42-9

7    (Mountaineers).  The City also draws distinctions between the nature of the amendments

8    sought by Plaintiff—additional park property, subtenant SNDA, and certain financing

9    agreements, Amended Lease at ¶¶ 41.1, 41.2.7—and those sought by other lessees.[7]  Def.

10   Reply at 10–11 (describing Arena Sports, Tennis Center, and the Mountaineers) (citing

11   docket no. 42, Exs. G, H, I).  As a result of these differences, the City argues there is no

12   "apples to apples" comparison and dismissal should follow without a "plausible similarly

13   situated" entity.  *Id.* at 11.

14   The City's arguments fail because the Court is required to treat the factual

15   allegations in the complaint as true.  *See Iqbal*, 556 U.S. at 678.  Assuming the facts in

16   the Complaint are true and construing those facts in the LLC's favor, the LLC makes a

17   plausible claim that the City treated it differently than other similarly situated lessees.

18

19   _____

20   [7] It is unclear whether the differences between the amendments are relevant to whether the
     lessees are similarly situated.  The LLC argues that the entities are similar because they leased

21   buildings from the City in the same location and requested changes to those leases.  Pla. Resp. at
     16–17.  The City's argument adroitly avoids these similarities by finding the differences,

22   wherever they may be.  But a class-of-one theory does not require identical comparisons, just
     similar ones.  *Id.* at 17.

23

ORDER - 20

1  *See* *Baker*, 584 F.3d at 824; *see also* *Iqbal*, 556 U.S. at 678 (A claim has "facial

2  plausibility" when the party seeking relief "pleads factual content that allows the court to

3  draw the reasonable inference that the defendant is liable for the misconduct alleged.").

4  Thus, at this stage, the LLC's complaint contains sufficient factual allegations to survive

5  dismissal.

6        The City's second argument—that discretionary governmental decisions are not

7  subject to class-of-one equal protection claims—attempts to extend *Engquist* to the facts

8  of this case.  Def. Motion at 24.  The contours of this narrowed class-of-one equal

9  protection claim are unclear.  The Eleventh Circuit applied the reasoning of *Engquist* to

10  independent contractors.  *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1274 (11th

11  Cir. 2008) ("We have little trouble applying the reasoning in *Engquist*, directed at the

12  [sic] government-employee relationship, to the circumstances in this case involving a

13  government-contractor relationship.").  Other cases have read *Engquist* to apply beyond

14  public employment and government-contractor relations.  *See*, *e.g.*, *Flowers v. City of

15  Minneapolis*, 558 F.3d 794, 799–800 (8th Cir. 2009) (police officer's investigative

16  decisions); *United States v. Moore*, 543 F.3d 891, 898–99 (7th Cir. 2008) (prosecutorial

17  discretion); *Vassallo v. Lando*, 591 F. Supp. 2d 172, 189 (E.D.N.Y. 2008) (school

18  official's decision to interview and search a student); *but see* *Hanes v. Zurick*, 578 F.3d

19  491, 494–96 (7th Cir. 2009) (declining to extend *Engquist* to bar a class-of-one claim

20  relating to repeated arrests).  However, the City points to no case law extending *Engquist*

21  to bar claims relating to amendments to a real estate lease.  *See* Def. Motion, docket

22  no. 40; Def. Reply, docket no. 49.

23

ORDER - 21

1    The extension of the *Engquist* holding, barring a class-of-one claim as a matter of

2   law, turns on the context of the particular case. *Hanes*, 578 F.3d at 495 ("The lesson we

3   take from this is that context matters."). Thus, outside of the public employment bar

4   constructed by the Supreme Court, it appears unlikely that there are categories of

5   government decisions entirely protected from a class-of-one claim. *Compare* *Olech*, 528

6   U.S. at 562 (allowing class-of-one claim related to zoning decision), *with* *Catcove Corp.*

7   *v. Heaney*, 685 F. Supp. 2d 328, 333 (E.D.N.Y. 2010) ("[Z]oning is a classic example of

8   a 'state action' that involves 'discretionary decision making.'"). At this stage, the LLC's

9   allegations create the context. Taking the allegations as true and drawing the inferences

10  in favor of the LLC, the Court cannot determine that the decision whether to amend the

11  Lease was so discretionary that the class-of-one claim is barred as a matter of law. Under

12  established Ninth Circuit case law, the LLC has adequately pleaded a class-of-one equal

13  protection claim. *See* *Gerhart*, 637 F.3d at 1023. The City's motion to dismiss the class-

14  of-one equal protection claim is DENIED.

15  **III.   Conclusion**

16      The rhetoric of both parties in this case clouds the issues that can be decided at this

17  stage of the litigation. If the parties had spent the same amount of time and effort

18  developing their legal arguments as they do mischaracterizing the opposing arguments,

19  the job of this Court would be much easier. After sorting through the irrelevant

20  characterizations and unnecessary filings, Defendant's motion to dismiss under Fed. R.

21  Civ. P. 12(c) is GRANTED in part and DENIED in part. The claims for breach of the

22  implied duty of good faith and fair dealing, declaratory judgment, and equal protection

23

1  are DENIED.  The violation of substantive due process, and unconstitutional taking

2  claims are dismissed.

3          IT IS SO ORDERED.

4          The Clerk is directed to send a copy of this Order to all counsel of record.

5          DATED this 5th day of December, 2012.

6

7          _____
           THOMAS S. ZILLY
8          United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ORDER - 23